UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROSEMARIE SMITH,

                              Plaintiff,

      -against-

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                              Defendant.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-6018 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Rosemarie Smith brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that she is not disabled and therefore not entitled to Disability Insurance Benefits ("DIB"). Smith argues that the SSA made four errors in denying her application for benefits: that it (1) failed to adequately consider her obesity; (2) failed to give her treating physicians' opinions proper weight; (3) failed to develop the medical and factual records; and (4) failed to properly evaluate her credibility. (Pl. Mem. (Dkt. 12) at 25-26.) The Commissioner of Social Security has filed a motion, and Smith has filed a cross-motion, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the court agrees with Smith that the ALJ failed to properly evaluate her treating physicians' opinions, the Commissioner's motion is DENIED, Smith's motion is GRANTED, and this case is REMANDED to the SSA for further proceedings.

**I.  BACKGROUND**

Smith was born on December 8, 1963. (Administrative Rec. (Dkt. 16) ("Rec.") at 33.) She has previously worked as a factory worker and tax preparer. (Id. at 127-29.) As a factory worker, Smith frequently lifted fifty pounds or more. (Id. at 156.) In May 1996, one year after

1

she started laboring as a factory worker, Smith began experiencing pain in her legs and feet. (Id. at 128, 149.) The pain persisted. (Id. at 150.) In 2002, Smith ended her job as a factory worker, and commenced temporary work as a tax preparer. (Id. at 128.) She continued in this role until March 15, 2005, when she stopped working altogether due to her "constant pain." (Id. at 127.) She has not had a job since. (Id. at 127-28.)

On July 19, 2007, Smith filed an application for DIB, claiming that she had been disabled since July 1, 1999, due to left knee pain, lower back pain, peripheral vascular deficiency in both legs, spine and neck problems, carpal tunnel syndrome, depression, and morbid obesity. (Id. at 13, 15-16.) Smith's representative Dennis Oliver later amended the alleged onset date of Smith's disability to September 30, 2005—the date Smith was last insured for disability benefits. (Id. at 13, 125.) The SSA denied Smith's application on December 3, 2007, and again upon reconsideration on April 11, 2008. (Id. at 13.)

Smith requested a hearing on her application before an Administrative Law Judge ("ALJ"), and ALJ Robert L. Erwin held a hearing on the application on August 6, 2009. (Id.) Smith was represented at the hearing by Oliver, a non-attorney, and gave testimony. (Id.) On October 15, 2009, the ALJ issued a written decision concluding that Smith was not disabled within the meaning of the Social Security Act. (Id. at 13-22.)

Smith requested that the SSA Appeals Council review the ALJ's unfavorable decision. (Id. at 9.) The Appeals Council denied Smith's request for review on April 8, 2010 (id. at 6-8), and again on October 19, 2010 (id. at 1-4), rendering the ALJ's decision the final decision of the Commissioner. See 42 U.S.C. § 405(g).

On December 8, 2010, Smith filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of the SSA's decision that she was not disabled

and therefore not entitled to DIB. (See Compl. (Dkt. 1).) Smith and the Commissioner cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Def. Mot. (Dkt. 13); Def. Mem. (Dkt. 14); Pl. Mem.; Def. Reply (Dkt. 15).)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).

### B. Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means

more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

### C. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition

> meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," *i.e.*, his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner "to show there is other gainful work in the national economy that the claimant could perform." Id.

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id.

## III. DISCUSSION

Smith alleges that the ALJ erred in concluding that she was not disabled under the Social Security Act. (Compl. ¶ 10.) She does not dispute the first two steps of the ALJ's five-step analysis: that Smith (1) had "not engaged in substantial gainful activity since September 30, 2005"; and (2) suffered from morbid obesity, congestive heart failure, hypertension, hyperlipidemia, venous insufficiency, left knee pain, and tobacco abuse, all "severe impairments." (Rec. at 15.)

At step three, the ALJ found that Smith did not suffer from an impairment or combination of impairments that met or medically equaled the Listing of Impairments. (Id. at 18.) At step four, the ALJ found that Smith had "the residual functional capacity to stand or walk two to four hours [and] sit six to eight hours [in] an eight hour workday." (Id.) He further found that Smith "could never crawl and kneel," but that she could engage in "occasional reaching above shoulder level with either arm, climbing, stooping, bending, and crouching." (Id.) Based on that residual functional capacity, the ALJ found at step four that Smith was "capable of performing past relevant work as a tax preparer and Russell Stover factory worker [because] this work [would] not require the performance of work-related activities precluded by [Smith's] residual functional capacity." (Id. at 20-21.) Accordingly, the ALJ concluded that Smith was not disabled within the meaning of the Social Security Act. (Id. at 22.)

Smith argues that the ALJ erred in his determinations at steps three and four in that he: (1) failed to adequately consider her obesity; (2) failed to give her treating physicians' opinions proper weight; (3) failed to develop the medical and factual records; and (4) failed to properly evaluate her credibility. (Pl. Mem. at 25-26.)

6

## A. Evaluation of the Effects of Smith's Obesity

Smith argues that the ALJ failed to properly consider the functional impact of her obesity. (Id. at 13-17.) Moreover, she argues that the effects of her leg pain and swelling in combination with her obesity were not properly considered. (Id. at 17.) She is incorrect.

As of October 25, 1999, obesity is no longer an impairment listed under the SSA Regulations (the "Regulations"). See SSR 02-1p; 20 C.F.R. § 404(P), Appendix 1. However, the ALJ is required to consider the effects of obesity in combination with other impairments throughout the five-step evaluation process, taking into account the claimant's residual functional capacity assessment. Walker v. Astrue, No. 06-CV-5978 (NGG), 2009 WL 2252737, at *11 (E.D.N.Y. July 28, 2009). At step three, obesity can rise to the level of a disabling impairment under certain circumstances. The Regulations dictate that obesity alone may be a medically equivalent listed impairment if the claimant's obesity "results in an inability to ambulate effectively." See SSR 02-1p; Walker, 2009 WL 2252737, at *11.

Here, contrary to Smith's assertions, the ALJ considered the totality of Smith's impairments and her obesity. At step two, the ALJ listed "morbid obesity" as the first of Smith's severe impairments. (Rec. at 15.) The ALJ's decision later describes the exact parameters of Smith's obesity, stating that she "has also been diagnosed with obesity, with a height of 69 inches, weight of 289 pounds, and a body mass index of 42.8." (Id. at 20.) Moreover, the ALJ cited SSR 02-1p, and explicitly stated that he had "considered the impact obesity had at steps two through five of the sequential evaluation, singly and in combination with [Smith's] other impairments." (Id.)

As defined within the Regulations, the "[i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with

7

the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 404, Appendix 1 § 101.00B2b. Ineffective ambulation is generally defined "as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. Here, Smith testified that she was able to do laundry, visit her friend, and go to church. (Rec. at 45-46.) Furthermore, Smith has not asserted that she suffers any "extreme limitation" on her ability to walk, nor has she claimed reliance on assistive devices for ambulation.

Therefore, the ALJ correctly determined Smith's obesity was not a medically equivalent listed impairment. See Walker, 2009 WL 2252737, at *12.

**B.    Evaluation of the Opinions of Smith's Treating Physicians**

Smith next argues that the ALJ failed to properly evaluate the opinions of Ernest Jones, M.D., and Gregory White, M.D., her treating physicians. (Pl. Mem. at 16-18.) She is correct.

1.    The Treating Physician Rule

A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotations omitted). Under the SSA Regulations, "a treating physician's report is generally given more weight than other reports." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

The "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, "[w]hen other substantial evidence in the record conflicts

with the treating physician's opinion, [ ] that opinion will not be deemed controlling." Snell, 177 F.3d at 133. And in any case, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner" and are therefore never given controlling weight. Id. (internal quotation marks omitted).

Even when an ALJ does not give *controlling* weight to a treating physician's opinion, the ALJ must consider several factors to determine how *much* weight to give the assessment. See 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must consider: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While an ALJ need not mechanically recite each of these factors, the ALJ must "appl[y] the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). The court will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" or when the court "encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

2. Application

Smith had two treating physicians during the relevant period in question: Gregory White, M.D., and Ernest Jones, M.D. Dr. White treated Smith from July 26, 2005, to October 20, 2006. (See Rec. at 429-34.) Dr. Jones treated Smith from July 19, 2007, to January 4, 2008. (See id. at 310-23.)

The ALJ refers to Dr. Jones only once in his ten-page decision, where he observes in a mere sentence that Dr. Jones recommended that Smith elevate her legs every night. (Id. at 19.) The ALJ fails to mention Dr. White at all in his decision. This failure to refer to the opinion of

9

one of Smith's treating physicians is itself grounds for remand. See Gonzalez v. Barnhart, 01-CV-7449 (FB), 2003 WL 21204448, at *1 (E.D.N.Y. May 21, 2003) ("Because the ALJ either ignored or disregarded the opinion of [plaintiff's] treating physician without explanation, the ALJ's determination is reversed and the matter is remanded for reconsideration."); Berry v. Bowen, 85-CV-2687, 1988 WL 127447, at *2 (E.D.N.Y. Nov. 25, 1988) ("The ALJ was not at liberty to ignore the opinions of plaintiff's treating physicians . . . . Accordingly, the court will remand the case for a further hearing.")

The ALJ erred in at least three other respects, all of which are additional grounds for remand.

First, the ALJ noted that Smith's treating physicians "failed to report any significant musculoskeletal, motor, or sensory abnormalities." (Rec. at 19.) This is false. Among other things, Dr. White reported that Smith had "limitations in left cervical rotation," "diminished sensation" in her spine, and "residual osteoarthritic changes in her knee." (Id. at 430-31.) Dr. Jones reported that Smith had "cervical radiculitis," "palpation of [the] cervical spine," and an "abnormal cervical spine MRI." (Id. at 316, 321.) These conditions all qualify as musculoskeletal, motor, or sensory abnormalities. And, in any event, even if Dr. White and Dr. Jones had not opined on these abnormalities, the ALJ had a duty to develop the administrative record by attempting to "fill any clear gaps" before overriding the doctors' opinions. Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)). The ALJ failed to do so.

Second, the ALJ noted that the "only physical functional assessment of [Smith] by an examining source . . . [was] that of Dr. Surber." (Rec. at 19.) Again, this is false. As indicated

above, Dr. White specifically opined on Smith's physical abilities (or lack thereof) when he noted that she had "limitations in left cervical rotation." (Id. at 430-31.)

Third, the ALJ noted that none of Smith's treating physicians assigned "any specific mental functional limitations" to her. (Id. at 20.) Once again, this is false. Dr. Jones noted that Smith was "having a lot of problems with crying spells," and he diagnosed her with depression (Id. at 321-22.) Apparently ignoring Dr. Jones' opinion, the ALJ instead relied on the opinion of Mr. Hardison, the consultative psychological examiner, who found that Smith had "no severe mental impairments." (Id. at 20.) The ALJ was not entitled to "simply pick and choose from the transcript only such evidence that support[ed] his determination." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("It is grounds for a remand for the ALJ to ignore parts of the record that are probative of the claimant's disability claim.") Moreover, Dr. Jones' opinion was entirely consistent with that of Mr. Hardison, who diagnosed Smith with "depressive disorder." (Rec. at 264.) Thus, the ALJ had no reason to elaborate on Mr. Hardison's opinion while ignoring that of Dr. Jones.

C.  **Other Issues**

Smith raises two other challenges to the decision of the ALJ: the ALJ (1) failed to develop the medical and factual records by requesting further information from Smith's treating physicians; and (2) failed to properly evaluate Smith's credibility. (See Pl. Mem. at 25.)

Regarding the ALJ's alleged failure to develop the medical and factual records, as discussed above, the ALJ on various occasions throughout his opinion noted the purported failure of Smith's treating physicians to report particular information. (See Rec. at 19-20.) To the extent Smith's treating physicians' opinions failed to reference materials that the ALJ would have expected or wanted to see, the ALJ should have sought out this additional information. See

Schaal, 134 F.3d at 505 (noting that "if the clinical findings [are] inadequate, it [is] the ALJ's duty to seek additional information from [the treating physicians]"). Because further findings "would so plainly help to assure the proper disposition" of Smith's claims, remand is appropriate. Rosa, 168 F.3d at 83.

Regarding the ALJ's alleged failure to properly evaluate Smith's credibility, this analysis was tainted by the ALJ's failure to properly evaluate the opinions of Smith's treating physicians (see Part III.B)—a failure that would naturally have affected how the ALJ viewed the totality of the medical evidence, and thus how he viewed Smith's credibility. The ALJ is directed on remand to evaluate the full record in light of a fresh evaluation of Dr. Jones' and Dr. White's opinions. See Sutherland, 322 F. Supp. 2d at 291 (because the ALJ's failure to properly apply the treating physician rule "affect[ed] consideration of the ALJ's treatment of the plaintiff's subjective complaints," the court would "not now consider" plaintiff's argument that the ALJ did not properly consider her complaints).

The court does not find that there is unequivocal evidence of disability or that further findings would be unhelpful to assure proper disposition of Smith's claim; thus, a remand for further proceedings—rather than solely for calculation of benefits—is proper. See Pokorny v. Astrue, No. 09-CV-1694 (NGG) (JO), 2010 WL 5173593, at *5 (E.D.N.Y. Dec. 14, 2010); Pogozelski, 2004 WL 1146059, at *20.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED, Smith's cross-motion for judgment on the pleadings is GRANTED, and this case is REMANDED to the SSA for a proper evaluation of the opinions of Dr. Jones and Dr. White and a reevaluation of Smith's subjective complaints in light of all the evidence.

SO ORDERED.

<pre>
                                              s/Nicholas G. Garaufis
Dated: Brooklyn, New York                     NICHOLAS G. GARAUFIS
       April 15, 2013                         United States District Judge
</pre>